UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**JONATHAN S. BERGERON,**

    **Petitioner,**

v.                                                                                    Case No: 5:21-cv-361-BJD-PRL

**WARDEN, FCC COLEMAN - LOW,**

    **Respondent.**

_____

### Report and Recommendation[1]

Petitioner, Jonathan Bergeron, seeks relief under 28 U.S.C. § 2241. (Doc. 1). Bergeron alleges that he did not receive due process during prison disciplinary proceedings in two ways: (1) he did not receive notice of the charge against him; and (2) the evidence against him was fabricated or insufficient. (*Id.* at 6). Respondent contends that Bergeron received all required due process during his disciplinary proceedings. (Doc. 4 at 8–11). The issue of whether Bergeron received notice and whether the evidence relied upon was fabricated or insufficient has been referred to me. (Doc. 23). Based on the evidence in the record and the testimony presented at the evidentiary hearing on this matter, I find that Bergeron received all required due process. Therefore, I recommend that Bergeron's petition be **DENIED**.

    **I.**    **Background**

On January 19, 2016, Bergeron was sentenced to 108-months' imprisonment followed by 10 years of supervised release for enticement of a minor to engage in sexual activity. *See*

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Criminal Case No., 6:14-cr-188-RBD-T_S-1 (Doc. 50). Bergeron served his sentence at the Federal Correctional Complex, Coleman ("Coleman") and was released on February 2, 2022. *See* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 21, 2024). Bergeron is now on supervised release. (Doc. 18 at 2).

On June 29, 2020, while he was incarcerated at Coleman, Bergeron was involved in a physical altercation with another inmate. (Doc. 1 at 10). Bergeron alleges that the other inmate assaulted him because of a dispute over room assignments. (*Id.*). The Respondent contends that the other inmate engaged Bergeron in a verbal altercation that escalated into a physical altercation when neither inmate backed down. (Doc. 4-1 at 7).

On August 23, 2020, Bergeron appeared in front of the Unit Disciplinary Committee ("UDC") regarding the June 29th incident. (*Id.* at 8). The UDC determined that the matter should be referred to a Disciplinary Hearing Officer ("DHO") for a formal hearing because of the severity of the charge. (*Id.*). The DHO hearing occurred on August 27, 2020. (*Id.* at 18). The DHO found Bergeron guilty of fighting with another inmate after reviewing photographs, witness statements, and medical assessments. (*Id.* at 21–22). Consequently, Bergeron lost fourteen days of good conduct time. (*Id.* at 22; Doc. 1 at 11). Bergeron appealed to the Southern Regional Office of the Federal Bureau of Prisons ("BOP"), but he never received a response. (Doc. 1 at 11). Bergeron filed a "sensitive BP9" to the BOP, but it found that no due process violations occurred. (*Id.* at 11–12). Bergeron now files this petition. (*See* Doc. 1).

II. **Evidentiary Hearing**

On October 18, 2024, an evidentiary hearing was held. Counsel for Bergeron and counsel for Respondent appeared at the hearing and presented arguments regarding whether Bergeron received notice of the disciplinary charge against him and whether the evidence

against him was fabricated or insufficient. Bergeron did not present any evidence or witnesses, but instead chose to rely on the evidence already in the record. Respondent presented four witnesses.

First, Respondent called William Gallion, a lieutenant with Coleman's Special Investigative Services ("SIS"). Gallion was the shift lieutenant when the altercation occurred. An inmate reported the altercation to a compound officer who notified Gallion. Gallion and other officials brought Bergeron and the other inmate to the special housing unit and separated them. Gallion observed offensive wounds on Bergeron's hands and photographed his injuries. Although the other inmate was medically assessed immediately, Bergeron did not see medical personnel until he sought treatment on August 6, 2020. Because the incident was unwitnessed by staff, SIS investigated the allegations and generated a report.[2] At least two inmate witnesses were interviewed and corroborated the story that Bergeron and the other inmate fought.

Second, Respondent called Marvin McCord, a Coleman official, whose everyday duties include investigating and serving incident reports. McCord testified that he served Bergeron with a copy of the incident report on August 20, 2020, at 8:22 in the morning as indicated on the incident report. McCord served Bergeron in his cell. Bergeron's cell mate Todd Stevens was also present and would have seen McCord if he was paying attention. McCord did not remember whether Bergeron made a statement when he was served but testified that, if Bergeron did, McCord would have notated the statement on the incident

---

[2] Respondent did not provide the full SIS report because it contained confidential information such as the other inmates' photographs, the other inmates' medical assessment, witness statements, and witness identities.

3

report. Bergeron did not sign the incident report because that is not the normal practice according to McCord.

Third, Coleman correctional counselor Patricia Wade testified regarding Bergeron's UDC hearing. At the UDC hearing, Wade referred the incident to the DHO for further proceedings because of the severity of the charge. Wade also presented Bergeron with notice of the DHO hearing and notice of his rights. Bergeron requested a staff representative and a witness.[3] Although Wade's recollections were not front of mind, she testified that she did not recall Bergeron telling her that he did not receive a copy of the incident report, and if he did, she would have given him a copy.

Fourth, DHO Aaron Rich testified as to Bergeron's DHO hearing. Rich stated that he could not remember if Bergeron told him he did not receive a copy of the incident report, but if an inmate told him they did not receive the incident report, he would provide one for them and postpone the proceedings in accordance with BOP policy that requires an inmate to have 24-hour notice before a hearing. Rich could not specifically recall whether Bergeron made a statement during the hearing but noted that if Bergeron did make a statement, Rich would have notated the DHO report.[4] Rich further testified that Bergeron waived his right to have a staff representative and witness present. Although Rich had a vague recollection, he stated that he would have considered photographs of Bergeron and the other inmate, the August 6th medical record, the other inmate's medical assessment, witness statements, and anything else in the SIS report when making his decision, as he is trained to do.

---

[3] On the DHO hearing notice, Bergeron requested Case Manager Butler to appear as his staff representative and Officer Walters to appear as a witness; however, Bergeron later waived his right to a staff representative and to call witnesses. (Doc. 4-1 at 18, 25).

[4] The report indicates that Bergeron chose not to make a statement. (Doc. 4-1 at 22).

### III. Legal Standards

Habeas is the "exclusive remedy" for prisoners seeking "immediate or speedier release from confinement." *Skinner v. Switzer*, 562 U.S. 521 (2011); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973). The only relief that can be gained in a habeas action is an immediate or speedier release. *See Rose v. Mitchell*, 443 U.S. 545, 586 (1979) (Powell, J., concurring with the judgment and noting that "the very purpose of the Great Writ is to provide some means by which the legality of an individual's incarceration may be tested."); *see also Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979) (noting that the "sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose[]").[5]

Prison disciplinary proceedings are not part of a criminal prosecution, and, therefore, the full panoply of rights that are due to a defendant in a criminal proceeding do not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, inmates are entitled to some due process protections. *Id*. Those protections include: (1) written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; (2) an opportunity to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety; and (3) a written explanation of the evidence relied on and reasons for disciplinary actions. *Id*.

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"[I]n addition to [*Wolff's*] requirements, some evidence must support the decision to revoke good time credits[.]" *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445 (1985) (a decision comports with the requirements of procedural due process when there is "some evidence" to support the fact finder's disciplinary decision); *Dean-Mitchell v. Reese*, 837 F.3d 1107, 1113 (11th Cir. 2016). The scope of this Court's review is limited and does not require an examination of the "entire record" or reweighing the evidence. *Hill*, 472 U.S. at 455–56; *Young v. Jones*, 37 F.3d 1347, 1460 (11th Cir. 1994). The "courts are not to conduct exhaustive reviews of findings of prison disciplinary panels." *O'Bryant v. Finch*, 637 F.3d 1207, 1214 (11th Cir. 2011). Neither "a disciplinary board's factual findings [n]or [its] decisions with respect to appropriate punishment are subject to second guessing upon review." *Hill*, 472 U.S. 455–56. The relevant question is whether "any evidence" supports the conclusion reached by the prison officials. *Id.*; *Young*, 37 F.3d at 1460; *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (holding that prison disciplinary proceedings are overturned only where no evidence in the record supports the decision) (citing *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981)).

IV. **Discussion**

   a. **Ground One**

I begin with Bergeron's contention that he did not receive written notice of the charge against him. The Respondent asserts that Bergeron was served a copy of the incident report at least 24 hours before the UDC hearing. (Doc. 4 at 3). Respondent provides the incident report and the DHO report as evidence. (Doc. 4-1 at 7, 20). Both reports state that Bergeron was served a copy of the incident report on August 20, 2020, at 8:22 in the morning. (*Id.*).

During the evidentiary hearing, McCord testified that he served Bergeron on August 20, 2020, at 8:22 in the morning—as indicated on the incident report. McCord serves incident reports in the regular course of his duties and—aside from the fact that McCord served Bergeron in his cell rather than in McCord's own office—he served Bergeron in the way he normally serves incident reports. Although Bergeron did not sign the incident report upon service, McCord has never seen an inmate sign an incident report and it is not the BOP's policy to attain an inmate signature on an incident report. I find McCord's testimony that he remembers performing his job function by serving Bergeron on August 20, 2020, consistent with the way he normally performs the function, credible.

In addition, during the evidentiary hearing, Wade—the official who conducted the UDC hearing—and Rich—the DHO—both consistently testified that, although Bergeron's disciplinary proceedings were not front of mind, they would have provided him with a copy of the incident report if he told them he was not served. Neither Wade nor Rich noted in their reports that Bergeron complained of not receiving the incident report or that Bergeron made any other statement. (*Id.* at 8, 20, 22). Rich further testified that he would have postponed the DHO hearing to comport with the BOP's 24-hour notice requirement, which mirrors *Wolff's* requirement, if he knew Bergeron was not served.

In support of his contention, Bergeron provides a sworn statement by his cellmate Todd Stephens attesting to the fact that Bergeron never received the report. (Doc. 1 at 26). Stephens claims to know that Bergeron did not receive a copy of the incident report because he was present at Bergeron's UDC hearing where he allegedly heard Bergeron tell Wade that he was not served. (*Id.*). Stephens further claims that he "can affirm and attest to the fact that [his] cellmate" "was not served a written incident report by [] McCord on [August 20, 2020]

7

at or around 8:22[.]" (*Id.*). Bergeron claims that Stevens attested to the fact that he was present when Wade allegedly served the incident report, but Stevens does not explicitly say he was present in his statement. Regardless of whether Stevens was present, his written witness statement does not carry significant weight and does not overcome the live testimony of McCord—the official who served the report.

Based on the evidence in the record and the witness testimony, I find that McCord served the incident report to Bergeron on August 20, 2020. (Doc. 4-1 at 9, 20). Bergeron received the incident report three days before his UDC hearing and seven days before his DHO hearing. (*Id.*). The incident report contains the offense, offense date, and facts sufficient to allow Bergeron to prepare a defense, and thus meets *Wolff's* written notice requirement. *See Warnock v. Warden, FCI Ray Brook*, No. 22-10771, 2023 WL 3620868, at *2 (11th Cir. May 24, 2023) (citing *Dean-Mitchell*, 837 F.3d at 1112, 1113 n.5) ("Applying *Wolff*, we've held that the Due Process Clause entitles inmates to notice not only of the disciplinary charges themselves and the dates of the alleged offenses, but also to notice of the facts necessary to defend against the charges."). If Bergeron did not receive a copy of the incident report, he could have requested one from Wade or Rich. Bergeron also could have called Stephens as a witness at his UDC or DHO hearings to attest to the fact that he never received a copy of the incident report. Because Bergeron was notified of the charge against him in writing at least 24 hours before the hearing on August 27, 2020, I respectfully submit that Bergeron is not entitled to relief on Ground One.

    b. **Ground Two**

Moving to Ground Two in which Bergeron claims his guilty finding was based on falsified evidence or alternatively that the evidence was insufficient. Bergeron argues that the

DHO must have fabricated a medical assessment because the DHO lists a "medical assessment[] identifying injuries to . . . Bergeron" as evidence of the offense despite the fact that Bergeron did not see any medical personnel until August 6, 2020. (Doc. 1 at 17–19). In the DHO report, Rich listed the documentary evidence upon which he based the guilty finding. The evidence included: "medical assessments," "photographs," and "SIS reports." (Doc. 4-1 at 21). The DHO report does not specify the date of the medical assessment identifying injuries to Bergeron. (*Id.*). The record contains one medical record of a clinical encounter on August 6, 2020, when Bergeron complained to a provider about jaw pain that he experienced after being "assaulted in June." (*Id.* at 14). Bergeron does not contend that this medical assessment was fraudulent, but rather believes the DHO report is referring to another medical assessment that purportedly occurred after the altercation and was fabricated. During the evidentiary hearing Gallion testified that Bergeron did not receive medical attention until August 6. Rich further testified that the medical record from August 6 is the "medical assessment" that he relied on, along with the other inmate's medical assessment, when weighing the evidence. I find there is no support for Bergeron's contention that any evidence was falsified.

Bergeron further contends that there was not enough evidence for the DHO to find him guilty of fighting. During the evidentiary hearing, Gallion testified that he personally saw Bergeron after the altercation with offensive injuries on his hands. Gallion photographed Bergeron's injuries. These photographs show Bergeron's irritated, scratched, and bloody knuckles. (*Id.* at 10–13). Gallion also testified that there were at least two witnesses to the incident who corroborated the story that Bergeron and the other inmate fought.[6] Rich testified

---

[6] Bergeron seems to contend that the witnesses were not real because Respondent did not provide their statements or identities, and because the photos of Bergeron taken after the incident say "unwitnessed."

9

that he reviewed and relied on the photographs of Bergeron, the witness statements, and the other inmate's photographs and medical assessment when making his determination. In addition, Bergeron acknowledged that he was in an altercation when he sought medical attention on August 6. (*Id.* at 14). Rich also reviewed this medical record and considered it when making his decision. Further, during the hearing, Bergeron did not present any evidence or witnesses—despite having the opportunity to do so—and when asked about the offense, he neither confirmed nor denied the charge. (*Id.* at 21). Thus, there is some evidence in the record to support the DHO's finding that Bergeron fought with another inmate. *See Hill*, 472 U.S. at 456.

Therefore, I respectfully submit that Bergeron is not entitled to relief on Ground Two.

**V.     Recommendation**

Accordingly, I submit that Bergeron's petition under 28 U.S.C. § 2241 (Doc. 1) should be **DENIED**.

Recommended in Ocala, Florida on thos 30th day of October 2024.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

---

Respondent claims that "unwitnessed" means "unwitnessed by staff." Respondent's assertion is consistent with Gallion's testimony that an inmate reported the fight to an official and SIS began investigating and interviewing inmate witnesses because staff did not witness the incident. The Respondent does not need to provide the witnesses' statements because this Court is not required or permitted to conduct an "exhaustive review" of the findings or reweigh the evidence. *See Hill*, 472 U.S. at 455–56; *Young*, 37 F.3d at 1460.

**COPIES FURNISHED TO:**
Presiding District Judge
Counsel of Record
Jonathan S. Bergeron
Courtroom Deputy